10910861098, Verizon Services and Cox Cybernetics.  Beginning with infringement, if I may, I'd like to start with our two more targeted points before addressing the broader new trial OT microphone. First, on Claim 1 of 481, we asked for JMOL infringement. Cox has only two grounds left for disputing that its system comes under the language as construed, and both lack any reasonable evidentiary support. First, does Cox search for the address of a CMS? Yes, and if you look at the only paragraph from Dr. Evans, their expert, which we quote, the yellow brief at page 16, Dr. Evans did not even deny that. Second, does Cox search for the address of a second database when the domain name server searches the address of the CMS, which of course contains a database? Again, if you look at the only paragraph on that point from Dr. Evans, quoted at the yellow brief at page 17, there is at most an unsupported conclusory assertion to that fact. I'm not sure if he actually denied it, but if he denied it, he offered one and only one reason, which is it doesn't support the conclusion. He said, a server isn't identical to the database that it contains. That doesn't obviously imply that the address of the server isn't the address of the database. And therefore, what's left is an entirely unsupported conclusory assertion on that point, which under numerous cases of this court is not enough. Indeed, Cox, in his closing at page 2668, conceded the point. It said that when the domain name server searches for the CMS, quote, that is essentially the same thing as searching a database for the address of a second, unquote, 2668 of the appendix. So taking the court's claim construction on 481 as a given, there is no evidentiary basis for a reasonable jury to conclude no infringement. What remains, therefore, is Cox's dispute about claim construction, which comes down to the point that step A need precede step B. And as the claim construction said, step A doesn't have to precede step B. Cox says, that's wrong. Step A does have to precede step B. And we think this is just on all fours with the Altiras case. Either the claim language or the specification or the purposes in any way overcome the presumption that listing steps in a method claim, which of course you have to be in order, you have to list something, doesn't require a sequence. So don't the steps refer back sequentially to each other, steps A, B, and C? No, they do not. D and C do. B and A do not. Did not refer to the fact that there is a predicate and determination that needs to be made with respect to each? No, not as to A and B. So on that one claim, we think no new trial is needed. We're entitled to judgment as a matter of law of infringement of claim one of the 4A law. One other focused non-infringement argument, a new trial argument, we do think that the district court misconstrued the 597. That seems to us to be a case where the language of best is given an express specification definition that controls. Indeed, we think that that express specification definition at 3145 of the appendix, which says that a sufficiently good resource is declared to be the best, would be sufficient even if the claim language said the best, which it doesn't. Instead, the claim language says a best, allowing even more room for the specification to do what it did here, which is to say this is how you know when you have the best. We declare it to be. Our broader new trial point on infringement is the O2 micropoint. Cox crossed a fundamental line in his closing argument. He asked the jury to limit the patent's coverage to the internet context and the inventor intent and expressly disparage horizons following the required approach of applying the construed claims to the accused systems, servers, and processes. The most important aspect of that, I guess, is that A2649-50, where Cox told the jury, there's a footnote in the claim construction chart you're given that says if there's no express construction, listen to the evidence and what? Not decide how terms get applied, but rather we put in all of this evidence of context, which was pervasively about the internet origins and focus of the inventor intent. Also, inventor intent about the 597 choosing paths, different paths. Inventor intent about the 481 involving multiple carriers. It's true that they made those comments in the closing argument. There's plenty of evidence, even their own expert evidence said that it was not internet. Can we assume the jury, can we assume that they overlooked passing comments in favor of actual evidence? Yes, because this was a legal issue of claim construction. And O2 micro makes absolutely clear that when the parties put in front of the jury a dispute about the scope of the claims, or here the scope of the patents, that the judge has to resolve that. It's not enough for the jury to sift through some very carefully worded testimony of experts. Dr. Evans didn't ever quite say it didn't apply to the internet. Maybe he talked a lot about the internet. Many times through the trial, from the opening and during the witness testimony, Cox had his witnesses walk right up to the line between talking about the background of the patents and asserting the patents are limited in certain ways by this background. It crossed that line during closing. It seems to me that this case is really dramatically different than what was happening in O2 micro. And so let me tell you my thoughts and then I can tell you why not, because I think you are going to realize a great deal about O2 micro. As I would call O2 micro, it was based on construing a particular claim term. And that claim term was found in a particular context. The only if order was limited in one that would provide for any exceptions. I mean that, in my view, I think one can figure is a classic claim construction dispute. In fact, that can be called out for that. We're not talking about the meaning of particular words. We're talking about how those words interplay in the context of O2 micro. I'm having a hard time seeing how your issue, that you presented here, which I think I understand, and it may or may not be a strong issue, is related to what was going on in O2 micro. Sure. The point I think I would make is this. I think that this is a fortiori. It's bad enough when a party says, look at this claim language. Here's how we interpret it. Here, jury, is how you should interpret it. And the other party says no. It's even worse when the party says, ignore the claim language entirely. The patent as a whole, we're not even attaching it to claim language, is limited in its coverage, not by reference to the claim language, but by the title, the internet background, the inventor versus. Well, of course, let me just say, they didn't quite say it as boldly as that. As you mentioned, they walked up to certain lines, arguably. But even that, I mean, the question is how one deals with those issues. In O2 micro, because it was a claim construction dispute, at least it was perceived by the panel, they said it requires claim construction. Here, I think you would acknowledge that, at least through the trial, what you were looking for was not a claim construction, necessarily. You were looking for either just a statement of objection or to add a corrective, a curative instruction. Not necessarily with respect to claim term construction. Well, as I say, during the trial, their witnesses were very careful not to assert that the patents were limited to these contexts and purposes. There was nothing to object to about what they said. So when did they cross the line? Simply at the closing argument? Absolutely. At 2649 to 50 of the closing arguments. Well, I'm confused, so you've got to help me out here. At the end, in the record, at A37, which I understand stood to be your objection, your side's objection or request for a curative instruction, and maybe I'm looking at the wrong thing. No, I think that's right. Mr. Hanson says, and subsequently, Your Honor, this is an objection to the requests we previously made, and I still want to reserve for the record, we do request no court instruction. So I agree with that. Two things. We proposed, during the normal course of submitting on paper, proposed jury instructions, an instruction that says the patents are not limited to the avengers. But you did that before the closing argument. That's one point. Yes. And the judge, who didn't tell us what instructions he was going to give until he gave them, we said we renew that request. Separate point. Internet point. The sentence is immediately after, I think, what you just read. Mr. Hanson said, we also think, under O2 micro, given what Mr. Boyce, Cox's closing advocate, said, you now have to instruct the jury. You may not do what Mr. Boyce said, which is to use the context in a new way to fill in limits on the coverage of the patent. That was a new line that he had crossed, and that created a claim construction issue. Either the patents are limited to the Internet, or they're not limited to the Internet. In fact... Can I ask you one question before you ask my approach on your rebuttal time? Did Verizon reply to Cox's closing argument that we've been talking about this morning? You had an opportunity to reply, right? I'm not sure we have that on the record. You have only one piece of it, or not the entirety of it. We made a reference to the Internet point on a page that's not in the joint appendix that immediately follows 2686. I should... So you did, did you respond to Cox's argument that we've been talking about here? This is 8-4. Transcript page 1684. Yes, it says Verizon's patents are not Internet-based. He keeps saying it. He said it just a few minutes ago. What page of the appendix is that on? It's transcript page 1684. That's not one of the pages that got into the bound joint appendix. So it would be 2684 if only that page had been bound. This is one of your most significant points. Well, because a closing argument exactly as in O2 is not a sufficient answer on a legal grammar for... It's psychological for you, right? Yes. O2 says the judge has to resolve the law. This is by way of another side. Thank you. Thank you so much. Next is the court. I think our position is quite simple. Verizon's claimed construction is being pressed on false premise. Before you get into that, could you address Mr. Toronto's first argument with respect to the 481 patent? Certainly. Certainly. With respect to the 481 patent, I would make several points. Number one, if you look at the term searching, in their reply, they cited to Dr. Ho's testimony at A1197. And their quote in the brief said that he testified that there was searching. But in fact, if you look at what Dr. Ho testified to, he testified exactly as Dr. Evans did. He said that what happens is the EMTA has the domain name address for the call management server. It has to send that off to the DNF server. And it gets back, literally he says, it gets the IP address back. Dr. Ho did not say that there was any searching going on in this step, exactly as Dr. Evans did say this was not searching. And Dr. Evans explained that the context here of searching implies that you're looking for something you don't know. That's what this patent talked about. It was trying to find authentication databases because you didn't know where the databases were. Here, this was simply converting a known address in one format, the domain name format, into another. Dr. Evans said that's not searching. The second point with respect to database, they critique Dr. Evans' testimony that well, that's the conclusory to say that the call management server, as Dr. Evans said, is a call management server, not a database. But it's equally conclusory to say that this is the address of the call management server that has the database in it. The court doesn't have to really look at that, though, because Dr. Evans' testimony came after two critical pieces of information. First, we had Dr. Ho on the cross explain what he understood a database to be. That was an unconstrued term as to which ordinary meaning applied. He said, quote, a database is something where data is returned in response to a request. We then submitted testimony from Mr. McLeod, again before Dr. Evans got on the stand, who testified that the database within the call management servers do not have IP addresses and can only be written to and read from the XA core inside of the switch, not from any other devices in Cox's network. So when Dr. Evans said the database, he was summing up what essentially the jury knew from Dr. Ho's testimony, and we cross-examined him on this point, and he admitted that the call management server databases could not return information. That's reasonable evidence that the jury could rely on to find non-infringement. What's your comment with respect to the order of the steps? Step A, requesting from one of said terminals, which is referring antecedent basis-wise to the preamble, and then Step B says searching a first database for the address of a second database containing a table of terminal data which includes identification of said requesting terminal. You cannot perform Step B until you know the identity of said requesting terminal. And I would say this case is frankly on all fours with the Mantec case. If you go look at the language of the claim there, the reason this court found process steps in that claim came in order of sequence is the patentee had done the same thing, and each step it had referred back to the earlier step by using the said signal as an antecedent basis format. Frankly, I think the specification here is just dispositive. I mean, Column 5 clearly says the evaluation function may also include a sufficiency criteria so that the resource manager does not continue to search after finding a candidate resource that's good enough to satisfy the request. But before it says that, it explains that the evaluation function is used to sort the selection criteria. That's plainly an alternative embodiment. Column 7 makes this clear as well. Block processing may be performed in a parallel fashion in which the evaluation function is applied as candidate resources are located according to the selection function. Preferably, the resource request includes a sufficiency criteria. So I think on this record the argument that the court erred in construing the best candidate, a set of resources to find the best candidate resource simply doesn't fly given the specification. Turning back to the last argument, which frankly is the principal argument in the brief, the false premise is there was a claim construction dispute. The court, with some of the questions, put your finger on the issue. Where was the claim term that was in dispute? Verizon in their briefs don't really identify a reason for them to do so because every term was construed. Well, there's no claim term necessarily in dispute, but the question they pose is with respect to whether or not the patent contains a particular claim limitation. Well, I'm not sure that's the question they pose. I think... Well, can't one fairly do either? The question is whether or not this patent claims are not limited to the Internet. Well, there's no claim term they focus on to say there's an O2 micro dispute. What about patent switched network? I'm sorry? What about patent switched network? Packet switched network? Packet switched network. Right. And I think the court has put your finger on the one term they sort of suggest may be in dispute. And let me read what they told the district court when they asked for this. We do request that the court instruct that none of the claims in this case is limited to the Internet. What page in the appendix do you use? I'm sorry, A2722. There has been some argument about it, and they cited the O2 micro, and said allowing the jury to resolve arguments about claim scope is not permitted. And Judge Hilton responded promptly, I believe the jury has been adequately instructed on the claims that are here, and that request will be denied. Now, you have to ask yourself, why did Judge Hilton respond that way? This reference to private networks versus Internet only is in the context of the party's debates before trial related to this packet data network issue, because as Verizon pointed out, they were arguing that the Internet could include Cox's private system. We didn't dispute that. Judge Hilton heard the testimony from Dr. Evans at two places, A1796 and A1839, where Dr. Evans said that he was not relying on a public versus private distinction for his non-infringement arguments. And with respect to Verizon's closing, the court asked, what did they say in rebuttal to A2684 in the record, page 1684, that counsel was referring to? Here's what they said. They said Verizon's patents, they're talking about, this is rebuttal to our argument, Verizon's patents are Internet-based. He, referring to Mr. Boyce, keeps saying it, he said it just a few minutes ago, and they go on to say that that's just not true. You'll have those patents being asserted here, right in the plain language of the patent, have nothing to do with the public Internet. They have no requirement of the public Internet. As Dr. Evans said, plainly they cover both public and private data networks. So Judge Hilton hears this request for this instruction about the claims aren't limited to the Internet, and hears Verizon articulating and gets that request after the trial and after this statement by Verizon. So he knows Dr. Evans already admitted that's not a basis for his distinction, and he knows that Verizon's counsel argued that to the jury and has argued that Cox's own expert is not relying on that distinction. So Judge Hilton knows there's simply no claim construction dispute here. The other thing that Judge Hilton argues was an effort by Verizon to comment on the evidence and bolster their argument that Cox was willful. And it's quite plainly reflected in the last statement by Verizon's counsel in rebuttal. He said, as Dr. Evans said, plainly they cover both public and private data networks, as Mr. Rowles could see with his two eyes when he read those patents back in 2006. What that referred to is in the record, Mr. Rowles at A-1569 had said in response to Verizon's accusation of willful infringement, well, yes, we did learn about the bondage judgment, and I did read the patents at the time, but I thought these patents all related to problems in Internet telephony and Internet VoIP, and Cox had earlier shown that they had not adopted an over-the-top Internet product. This was our willfulness defense. It had nothing to do with some subtle invitation to get the jury to reject looking at the claims as the court instructed. And I think you can look at the fact that in our closing, the organization is such that we start with talking about the two roads the parties went down and how we succeeded with packet cable, they failed with Internet VoIP, that referred to the damages issues, this referred to willfulness, and then right after this, Mr. Boyce began going through the detailed evidence of each claim limitation and how we did not satisfy that detailed evidence. For example, after the cite they made to A-2649-50, Mr. Boyce's first, the first part of his argument about the patents dealt with the future patents, and our principal grounds of non-infringement on those patents dealt with a non-construed term, a system of interlinked packet data networks. While packet data networks had been construed, that whole phrase had not been construed. Cox's principal non-infringement dispute on those patents were that we had a single network, that it was not a system of interlinked packet data networks. And Verizon knows that Boyce, Mr. Boyce's argument was required to rebut their claim that simply because Cox connected to the internet, it created a system of interlinked packet data networks. That's why we argued we don't connect to the internet. So when you step back and look at this charge in context, what you're seeing is a party who hears a defense of willfulness wanting to get Judge Hilton not to step in and resolve some crucial claim construction dispute, but to get him on their side of the willfulness equation telling the jury that, well, Mr. Rowles should have known better. And that would have been totally improper in the context of this case. Finally, on this point, you know, Verizon says we went right up to the line throughout trial with testimony from witnesses, and then we stepped over the line and closed it. I think there's two really significant problems with that point. Number one, they never during the trial saw limiting instructions as all of this testimony about the internet was coming in and said, Judge Hilton, it's fine to let that in for purposes of Cox's willfulness defense or damages, but we need to tell the jury not to get mixed up in claim construction. They never asked the court to do that. They also didn't jump up during closing and object to any of these statements. Now, here they say, well, they were surprised by closing and Judge Hilton gave them the opportunity to come back after closing and ask for a new charge, but that's simply not true. If we were stepping over the line in such a blatant manner as they accused during closing, they should have been able to step up and object. If instead, what their argument really is, is this was so subtle that Verizon's counsel didn't even recognize it themselves, how could the jury possibly have been prejudiced here? They were given specific and detailed instructions to follow the claim constructions, to follow the claims, and apply those claims to the evidence. And finally, you know, I think you just can't look at this case without looking hard at the Fourth Circuit Authority, which says this is reviewed on abuse of discretion standard, and the Fourth Circuit says if the trial judge who is there at trial, listening to all the evidence, denies the motion for the trial, the court should only grant a new trial on appeal sparingly. It's an extraordinary remedy, and it's not warranted here where there were no objections from Verizon. I'll save the rest of my time for Mark Butler. I didn't hear you because I didn't raise your cross-appeal, so I don't want to give you a moment. Well, Your Honor, I have reserved two minutes for the cross-appeal. If you wish me to address it now, I'm certainly willing to. You said you didn't raise it. I apologize. I apologize. I'll tell you, I'll give you a couple of minutes to raise it quickly. Thank you, Your Honor. I just really have two points on that, Your Honor. First, with respect to Claim 1 of 481 Patton, once we had come forward with evidence of invalidity, it was their burden. The burden of production shifted. We pointed out that Dr. Ho simply conflated those claims. He did not specifically address the claim elements of Claim 1. He got Claim 1 confused with Claim 35 and proceeded to explain why Claim 35 was not invalid. And then, second, Your Honor, with respect to the 597 Patton, the only thing they cite to show that the 597 Patton is invalid is Mr. Zatko's airplane analogy. I mean, that has nothing to do with whether the disclosure and the figures that we pointed to and our expert testified about disclosed the last step of allocation. That is simply an expert's effort to try to communicate and simplify things, but it has to be grounded in the disclosure, and nowhere did he point to any grounding in the disclosure to show that that allocation step wasn't present. In fact, that is why we continue to object to his qualifications. The airplane analogy about reserving a seat to Boston versus actually getting on the flight to Boston has nothing to do with any technical issues or anything having to do with his qualifications. So it can't support the claim. With respect to the 481, on its face, the claim requires searching for the address here, the address of the CMS. Undisputed, not denied by Dr. Evans, that COTSA system, though it knows the identity, the name of the CMS, does in fact search for the address of the CMS. That's what the claim requires. That's the whole point of this, translating one identifier into the actual address. COTSA's other point, the sequencing of steps A and B. Under ALTIRIS, it's not enough that there be some linguistic nexus between the claims. What's required to overcome the presumption that steps need not occur in the order in which they're listed is a linguistic connection or some substantive connection that requires the sequence. Here it is undisputed that step A can be performed wholly independent from step B in whichever order. The ALTIRIS standard therefore makes the district court's claim construction correct. The argument about argument being enough and the fact that there was sufficient evidence for the jury to find non-infringement wholly apart from this internet issue. That just confuses the issue. The Supreme Court, for example, just this past spring in the CSX against Hensley case, summarily reversed for failure to give an instruction where there was sufficient evidence for the jury to find either way because it had to be instructed to stay within the bounds of the law. In patent         bounds of the law. In the case of Hensley case, there was sufficient evidence for the jury to find non- infringement wholly apart from this internet issue.      spring in the CSX against Hensley case,    give an instruction where there was sufficient evidence for the jury to find either way because it had to be instructed to stay within the bounds of the law. It was terribly important to find a path through this otherwise numbing technical complexity and a lot of very weak other non- infringement defenses to say to the jury, you have a simple way to decide this. Just think, these are the facts of  case. The court has said that there is no shift in the burden of persuasion. It doesn't entitle the challenger to judgment. It doesn't require the fact finder to make the finding. Second, the legal point is irrelevant anyway because Dr. Ho did testify on exactly this point. What he said, Dr. Ho is our expert, Dr. Ho said, look at Cox's expert, Dr. Ho, what does he do about the relationship between Claim 1 and Claim 35? Look at his testimonies, look at his testimony. He says, well, of course, the first database is the domain of  1. Dr. Ho treated them as identical. You can't find that function being performed simultaneously therefore and expressly addressing the second database in Claim 1 and the authentication object in Claim 35. Dr. Ho's testimony, as we cited, in 2516, expressly makes the point with respect to both. So there's plainly sufficient evidence. And finally, I guess on the 597, I'm going to have to leave